UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____
                                    )
NATIVE AMERICAN ARTS, INC.,         )
                                    )
         Plaintiff,                 )
                                    )
    v.                              )   CA. No. 10-106 S
                                    )
CONTRACT SPECIALTIES, INC. D/B/A    )
SUNBURST COMPANIES,                 )
                                    )
         Defendant.                 )
_____)

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Before the Court is a motion to dismiss the complaint in this case. For the reasons set forth below, the motion is denied.

I.  BACKGROUND

Plaintiff Native American Arts, Inc. ("NAA") is a wholly Indian-owned organization that manufactures and sells Indian arts and crafts.[1] Defendant Contract Specialties, Inc. ("Specialties") is a Rhode Island corporation that sells arts and crafts, including those made in an Indian style. NAA has sued Specialties for violations of the Indian Arts and Crafts Act of 1990 and the Indian Arts and Crafts Enforcement Act of

---

[1] In deference to the terminology employed in the Indian Arts and Crafts Act, this Court will use the term "Indian" rather than "Native American."

2000 (collectively, the "IACA"), 25 U.S.C. § 305 et seq., which forbids the offer or sale of a good in a manner that falsely suggests it is an Indian-made product.[2]

The single-count complaint alleges that from March 15, 2006 onward, Specialties has advertised, marketed, and sold its non-Indian-made products nationwide in a manner that falsely suggests they are Indian-made. These products include charms, barrettes, bracelets, earrings, and various other bibelots and things, some sixty samples of which are recited in the complaint. According to the complaint, Specialties falsely suggested that its non-Indian-made products were in fact Indian-made by, among other things, advertising them using the label "Indian" and names of tribes such as "Apache," "Navajo," "Kiowa," and "Cree." These terms were used without qualifiers or disclaimers to alert potential buyers that the goods were not really made by Indians or members of these tribes.

According to the complaint, NAA and Specialties compete for the sale of similar products made in an Indian style – NAA's being authentic and Specialties' fake – such that NAA "has suffered competitive injuries as a result of" Specialties'

---

[2] This opinion will use the terms "Indian-made product" and "Indian product" as shorthand for the statutory phrase "Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization, resident within the United States." 25 U.S.C. § 305e(b). For more on what this phrase means, see infra Part II(D).

activities.  (Compl. ¶ 22, Mar. 8, 2010, ECF No. 1.) Specifically, Specialties' marketing and sales of its fake Indian-made products have allegedly eaten away at NAA's sales, driven down the price of NAA's products, and damaged NAA's goodwill and reputation.  (Id.)  NAA contends that these actions violate the IACA, and seeks injunctive relief and statutory damages.

Specialties moves to dismiss the complaint because (1) NAA lacks standing to sue; (2) NAA has not stated a claim, with requisite particularity, for a violation of the IACA; (3) the IACA runs afoul of the First Amendment; and (4) the IACA contravenes the equal protection clause of the Fifth Amendment. Specialties also disputes NAA's calculation of damages, and argues that the damages provision in the IACA violates due process.

II. DISCUSSION

A. The Indian Arts and Crafts Act

The IACA is a truth-in-advertising statute aimed at ensuring that products marketed and sold as "Indian" are actually Indian.  Congress enacted it in 1990 in response to concerns that a significant portion of the national market for "Indian" products was made up of counterfeit products, and that existing state and federal laws (including a 1935 version of the Act) were ineffective in curbing the flood.  H.R. Rep. No. 101-

3

400(I), at 4-5 (1990).  For example, a 1985 Commerce Department report to Congress "estimated that unmarked import imitations of Indian arts and crafts are siphoning off 10 to 20 percent of the market for genuine handicrafts produced domestically," then worth an annual $400–$800 million.  Id. at 4-5.  See also S. Rep. No. 106-452, at 1 (2000) (citing estimates that in the one-billion-dollar market for Indian goods, $400-500 million of demand was being satisfied from non-Indian sources).  Congress concluded that the influx of fake Indian products had reduced demand for the real thing, driven down the price of authentic Indian wares, tainted consumer confidence in the integrity of the market, and dissuaded young Indians from learning and practicing time-honored ways of artisanship that were an important cultural heritage.  S. Rep. No. 106-452, at 1-2.  And "[w]ith Native communities plagued by unemployment and stagnant economies, the flood of fake Indian arts and crafts is decimating one of the few forms of entrepreneurship and economic development on Indian reservations."  Id.

The IACA, as enacted in 1990, conferred a private right of action on Indian tribes and individual tribe members, who could both sue on behalf of themselves or on behalf of an Indian arts and crafts organization.  See Pub. L. No. 101-644, 104 Stat. 4662 (1990).  But there was no right of action for an Indian arts and crafts organization itself.  See, e.g., Native Am.

4

Arts, Inc. v. J.C. Penney Co., 5 F. Supp. 2d 599, 604 (N.D. Ill. 1998) (holding that the IACA "prevents Indian arts and crafts organizations from suing in their own right"). In 2000, Congress amended the statute to, among other things, provide for suits "by an Indian arts and crafts organization on behalf of itself." 25 U.S.C. § 305e(c)(1)(C) (current version at 25 § 305e(d)(1)(D)).

NAA is an "Indian arts and crafts organization" within the meaning of § 305e(d)(1)(D). And it certainly has taken advantage of the statutory private right of action: depending on which party's numbers one believes, NAA has filed between 90 and 120 IACA actions since 2000. (See Mot. to Dismiss Hr'g Tr. 3:2-3; 27:25-28:3, Aug. 18, 2010.) Almost all of these actions have been brought in the Northern District of Illinois, where NAA is based. This action too was originally commenced there, but the district court held it did not have personal jurisdiction over Specialties, Native Am. Arts, Inc. v. Contract Specialties, Inc. (Specialties I), No. 09-cv-3879, 2010 WL 658864, at *7 (N.D. Ill. Feb. 18, 2010), so NAA brought suit here. This appears to be the first IACA case in the First Circuit.

B. Standing[3]

Under Article III of the Constitution, a party does not have standing to sue unless it can demonstrate (1) an injury in fact, (2) fairly traceable to defendant's challenged conduct, that (3) is likely to be redressed by the requested relief. Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000). An injury in fact is an "invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations and quotation marks omitted).

Specialties claims that NAA cannot demonstrate injury in fact (and, by extension, traceability and redressability), because it cannot show how Specialties' alleged passing off its fake Indian products as authentic harms NAA. Specialties shows that it does not sell its "Indian" products in Illinois, NAA's principal place of business, and that NAA has "no employees, business locations, offices or property in Rhode Island,"

---

[3] At the outset, it is worth noting that the decision of the U.S. District Court for the Northern District of Illinois in the previous incarnation of this case does not preclude this Court from considering NAA's standing. That decision granted Specialties' motion to dismiss for lack of personal jurisdiction and dismissed the remainder of the motion "as moot," Native Am. Arts, Inc. v. Contract Specialties, Inc. (Specialties I), No. 09-cv-3879, 2010 WL 658864, at *1 (N.D. Ill. Feb. 18. 2010), so there is no res judicata as to standing or any other issues disputed in this case.

Specialties' principal place of business. NAA counters that the parties' competition is not confined to Rhode Island or Illinois but takes place "nationwide."

Specialties claims that there is no evidence of such nationwide competition, and the fact that both parties have some customers in the various states is not sufficient to establish it. According to Specialties, the IACA must be interpreted congruently with the trademark statute (the Lanham Act, 15 U.S.C. § 1051 et seq.), which requires a showing of competitive injury that will not be satisfied by dint of the fact that both parties sell similar products nationwide. Rather, the Lanham Act requires an inquiry into the parties' "area and manner of production, marketing, distribution, and concurrent use" to determine that they do, in fact, compete with each other. (Def.'s Reply 6, Jul. 21, 2010, ECF. No. 17 (citing Lanham Act cases from various jurisdictions).) Specialties argues that because NAA has presented no evidence of competition between the parties, but has simply stated that they sell similar products nationwide, it cannot pass the standing threshold.

Specialties' standing challenge is a serious one. It would be an alarming prospect if anyone who has had some sales, no matter how few (or perhaps even a single sale), of authentic Indian products in the United States could recover millions of dollars of statutory damages from any seller of fake Indian

products in the nation – especially since such damages may significantly exceed a defendant's gross revenues for the period in question. But to hold that NAA has standing to sue is not tantamount to holding that it must prevail and recover. If NAA fails to adduce sufficient evidence of competition, it may suffer defeat at summary judgment. At this stage of litigation, however, it is enough for NAA to allege that it sells similar products as Specialties and that its sales and reputation are harmed by Specialties' false advertising and sales of fakes. (See Compl. ¶ 22.) To determine whether the parties' products and channels of distribution are sufficiently similar and whether they appeal to similar customers is an evidence-based inquiry meet for summary judgment, not a motion to dismiss.

This conclusion is supported by the Supreme Court's instruction on the proper standing inquiries at various stages of litigation:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim . . . . In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true.

Lujan, 504 U.S. at 561 (internal citations and quotation marks omitted).

IACA jurisprudence also supports this conclusion. To begin with, although Specialties cites some references to the general idea that the IACA should be interpreted like the Lanham Act, it does not cite any decisions applying the Lanham Act standing test to IACA claims or holding that IACA standing is the same as Lanham Act standing. Moreover, even the Lanham Act decisions Specialties cites do not grant motions to dismiss for lack of standing; rather, they consider the extent of competitive injury on summary judgment. See Silva v. Burt's Bees, Inc., No. CIV. 01-53-B-C, 2001 WL 1349364, at *7-8 (D. Me. Oct. 30, 2001); L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc., 9 F.3d 561, 575 (7th Cir. 1993); Pignons S. A. de Mecanique de Precision v. Polaroid Corp., 498 F. Supp. 805, 810 (D. Mass. 1980); Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1205 (1st Cir. 1983).

Further, Specialties cites no decisions dismissing an IACA action for lack of standing due to deficient allegations of injury in fact in the complaint.[4] To the contrary, many courts have held that NAA does have standing to sue based on

---

[4] Native Am. Arts, Inc. v. Specialty Merch. Corp., 451 F. Supp. 2d 1080, 1082 (C.D. Cal. 2006), dismissed NAA's complaint for failure to allege an injury in fact, but the reason was that the injuries were alleged in NAA's opposition to defendant's motion to dismiss, rather than in the complaint itself. The court thus dismissed the action without prejudice. Id. at 1084. Subsequently, NAA filed an amended complaint and the parties settled their dispute. In this case, NAA has learned its lesson and has alleged the competitive injuries in the complaint.

9

allegations nearly identical to those in the present complaint. See J.C. Penney, 5 F. Supp. 2d at 602; Ho-Chunk Nation ex rel. Native Am. Arts, Inc. v. Nature's Gifts, Inc., No. 98 C 3951, 1999 WL 169319, at *3 (N.D. Ill. Mar. 19, 1999); Native Am. Arts, Inc. v. Peter Stone Co. U.S.A., No. 08 CV 3908, 2009 WL 1181483, at *2 (N.D. Ill. Apr. 30, 2009); Native Am. Arts, Inc. v. Mangalick Enters., Inc., 633 F. Supp. 2d 591, 596 (N.D. Ill. 2009) (all holding that plaintiff has alleged sufficient facts to establish standing).[5] The Peter Stone court's observations on injury in fact are particularly apposite:

> While NAA does not point to any particular sale injuries or lost sales figures, it is important to note at the motion to dismiss stage that the burden on the complaining party is no greater than that required to give the defendant notice as to the crux of the case. . . . While the facts surrounding the validity of NAA's injury are unclear (and may even end up being

---

[5] There is a potentially significant difference between those cases and this one: It appears that in most of those cases the parties sold their products in nearby outlets in Illinois, so there was no doubting a similar geographic area of distribution. See Native Am. Arts, Inc. v. J.C. Penney Co., 5 F. Supp. 2d 599, 602 (N.D. Ill. 1998) (the parties sold their products "down the hall in the same retail shopping mall"); Ho-Chunk Nation ex rel. Native Am. Arts, Inc. v. Nature's Gifts, Inc., No. 98 C 3951, 1999 WL 169319, at *1 (N.D. Ill. Mar. 19, 1999) (defendant sold its products in a mall in Lombard, Illinois); Native Am. Arts, Inc. v. Mangalick Enters., Inc., 633 F. Supp. 2d 591, 593 (N.D. Ill. 2009) (defendant advertised and sold its products in the Northern District of Illinois). By contrast, in this case, Specialties has had no sales of its fake Indian products in Illinois (except for sales to NAA itself, which, obviously, do not count for the purpose of determining competitive injury). See Specialties I. So the Court might need to see more on summary judgment to be convinced that the parties do in fact compete.

adjudged altogether illusory), it is clear that NAA has properly pled its case to establish its standing.

Peter Stone, 2009 WL 1181483, at *2.

For these reasons – although a showing of competitive injury is ultimately required, and its want may prove dispositive in this case – it would be premature at this stage to dismiss NAA's complaint for lack of standing.

    C.    Stating a Claim Under the IACA

Specialties claims that because § 305e of the Act is entitled "Cause of action for misrepresentation of Indian produced goods" (emphasis by Specialties), NAA's claim under the Act is subject to the detailed pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure. But Rule 9(b) by its terms applies only to allegations of "fraud or mistake." Neither fraud nor mistake must be alleged to state a claim for violating § 305e. Nor does NAA allege either. Thus, the detailed pleading standard of Rule 9(b) does not apply. See Mangalick, 633 F. Supp. 2d at 597-98 (considering the text and purpose of Rule 9(b), as well as the language and legislative history of the IACA, to conclude that Rule 8(a), not Rule 9(b), applies).[6]

---

[6] The conclusion that Rule 9(b) does not apply to IACA claims seems self-evident. Nevertheless, several decisions – all predating Mangalick, and none of them binding on this Court – apply Rule 9(b) to IACA claims. See Native Am. Arts, Inc. v. Village Originals, Inc., 25 F. Supp. 2d 876, 879-80 (N.D. Ill.

11

Nor is there any force to Specialties' argument that Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23 (1st Cir. 2004) compels the application of Rule 9(b). That case involved a straightforward common law claim of "fraudulent misrepresentation." Synopsys, 374 F.3d at 29 n.5. The elements of common law fraud, see id., are not the elements required to establish liability under the IACA. See 25 U.S.C. § 305e. Notably, in contrast to common law fraud, the IACA has no scienter requirement and "imposes strict liability for objectively determinable conduct." Mangalick, 633 F. Supp. 2d at 597; see also H.R. Rep. No. 101-400(I), at 15 (1990) (showing that the IACA of 1990 did away with the scienter requirement of an earlier version of the statute by deleting its "willfully" language). Just because the word "misrepresentation" appears in

---

1998); Nature's Gifts, 1999 WL 169319, at *5; Native Am. Arts, Inc. v. Earth Dweller, Ltd., No. 01-C-2370, 2001 WL 910394, at *2 (N.D. Ill. Aug. 10, 2001); Native Am. Arts, Inc. v. Aquino, No. 04 C 2540, 2004 WL 2434260, at *2 (N.D. Ill. Oct. 29, 2004); Native Am. Arts, Inc. v. Doll Market, Inc., No. 06-C-0195, 2007 WL 257640, at *1 (N.D. Ill. Jan. 25, 2007); Native Am. Arts, Inc. v. Peter Stone Co. U.S.A., No. 08 CV 3908, 2009 WL 1181483, at *3-4 (N.D. Ill. Apr. 30, 2009). Even more surprisingly, two of these decisions apply Rule 9(b) despite explicitly recognizing that IACA is a strict liability statute. See Village Originals; Nature's Gifts. Perhaps the explanation for these odd results is that the plaintiffs had not bothered to contest the applicability of Rule 9(b), so, in the absence of briefing on the issue, the courts simply assumed that Rule 9(b) applied. In any event, all but one of the foregoing decisions held that the plaintiffs' allegations, which were similar to the allegations in the present case, satisfied even the heightened Rule 9(b) standard.

the title of one section of the Act does not mean that all claims under the Act are subject to Rule 9(b).

NAA's allegations that, during a certain period of time, Specialties has passed off certain specified non-Indian products as Indian by, among other things, describing them as "Indian," "Navajo," and "Apache" is sufficient to satisfy the "short and plain statement of the claim" required by Rule 8(a)(2). Indeed, the allegations would be sufficient to state a claim even if Rule 9(b) were applicable (which it is not). See Native Am. Arts, Inc. v. Village Originals, Inc., 25 F. Supp. 2d 876, 879-80 (N.D. Ill. 1998); Nature's Gifts, 1999 WL 169319, at *5; Native Am. Arts, Inc. v. Earth Dweller, Ltd., No. 01-C-2370, 2001 WL 910394, at *2 (N.D. Ill. Aug. 10, 2001); Native Am. Arts, Inc. v. Doll Market, Inc., No. 06-C-0195, 2007 WL 257640, at *2 (N.D. Ill. Jan. 25, 2007); Peter Stone, 2009 WL 1181483, at *4 (all holding that allegations similar to those in the present complaint satisfy the detailed pleading standard of Rule 9(b)).

D. The First Amendment

Section 305e(b) of the IACA provides, among other things, a cause and right of action against a person who offers or sells a good in a manner that falsely suggests it is an "Indian product." The meaning of "Indian product" is determined under regulations promulgated by the Secretary of the Interior. 25

U.S.C. § 305e(a)(2). The pertinent regulation provides, "[t]he term 'Indian product' means any art or craft product made by an Indian." 25 C.F.R. § 309.2(d)(1). Then, in a subsection entitled "Illustrations," the regulation states that the term "includes, but is not limited to . . . Art made by an Indian that is in a traditional or non-traditional style or medium." 25 C.F.R. § 309.2(d)(2)(i).

Specialties argues that the statute and the regulation permit criminal liability "simply [for] creating artwork in the traditional or nontraditional Indian style or medium." (Def.'s Mem. in Support of Mot. to Dismiss 23, May 3, 2010, ECF No. 11 ("Def.'s Mem.").) According to Specialties, because it is not clear what a "traditional or nontraditional Indian style or medium" is, and because artistic expression is protected by the First Amendment, the statute is vague and overbroad and violative of the First Amendment.

Specialties' interpretation of the regulation is wrong. The regulation mentions art "made by an Indian that is in a traditional or non-traditional style or medium" as an "illustration" of an "Indian product," 25 C.F.R. § 309.2(d)(2)(i); nowhere does it say that <u>every</u> product made "in a traditional or non-traditional style or medium" is, or is pretended to be, an "Indian product." Indeed, the regulation goes on to state, in a part Specialties does not quote, that

14

"[a]n 'Indian product' under the Act does not include . . . [a] product in the style of an Indian art or craft product made by non-Indian labor." 25 C.F.R. § 309.2(d)(3)(i) (emphasis added). This is like saying that a Persian artifact is an artifact made by a Persian, and mentioning a Persian carpet with a rosette motif as an illustration – which certainly would not mean that every non-Persian who makes a rosette-motif carpet is trying to pass it off as a Persian carpet. There is thus no merit to Specialties' contention that a person may be liable under the IACA simply for making a product in an Indian style. See Village Originals, 25 F. Supp. 2d at 880 ("IACA does not restrict the artistic quality of [defendant's] merchandise. Rather, it merely regulates the means through which such merchandise is marketed."); accord Earth Dweller, 2001 WL 910394, at *3.[7]

The Court has no trouble dismissing this threadbare First Amendment challenge to the IACA, as other courts have done. See Village Originals, 25 F. Supp. 2d at 880-81; Nature's Gifts, 1999 WL 169319, at *3-4; Earth Dweller, 2001 WL 910394, at *3-5; Native Am. Arts, Inc. v. Bundy-Howard, Inc., 168 F. Supp. 2d 905, 910 (N.D. Ill. 2001); see also Native Am. Arts, Inc. v. Waldron Corp., 399 F.3d 871, 873-74 (7th Cir. 2005) (overturning

---

[7] In fact, NAA has specifically stated that it is suing Specialties not for making Indian-style products but for passing off non-Indian-made products as Indian-made.

15

the district judge's ruling that a regulation under the IACA violated the First Amendment and noting that "[i]f he were right, trademark law would be unconstitutional.").

E.  Equal Protection

Specialties argues that the IACA is "race-conscious" legislation because it "grants Native Americans a right not enjoyed by other Americans, that is, a right to the protection of a special ethnic-based trademark for its style of goods that is not available to any other race or ethnicity." (Def.'s Mem. 28.) As such, Specialties argues, the IACA should be subjected to strict scrutiny, a test it cannot survive.

But the Supreme Court has established that statutes providing for special treatment of Indians will not be disturbed "[a]s long as the special treatment can be tied rationally to the fulfillment of Congress' unique obligation toward the Indians." Morton v. Mancari, 417 U.S. 535, 555 (1974); see also United States v. Antelope, 430 U.S. 641, 645 & n.6 (1977) (holding that "federal legislation with respect to Indian tribes . . . is not based upon impermissible racial classifications" and noting that Article I, § 8 of the Constitution gives Congress the power to "regulate Commerce . . . with the Indian tribes"). Accordingly, federal courts have long recognized that Indian-affairs legislation is subject to rational basis review, not strict scrutiny. See, e.g., United States v. Garrett, 122

16

Fed. Appx. 628 (4th Cir. 2005); Kahawaiolaa v. Norton, 386 F.3d 1271 (9th Cir. 2004); Am. Fed'n of Gov't Emps., AFL-CIO v. United States, 330 F.3d 513 (D.C. Cir. 2003); Peyote Way Church of God, Inc. v. Thornburgh, 922 F.2d 1210 (5th Cir. 1991) (all upholding Indian-affairs legislation based on rational basis review).

It is clear that Congress was concerned about the heavy flow of counterfeit Indian products, and attempted to stem that tide by enacting the IACA and imposing stringent damages for counterfeiting and false advertising. See supra at 3-4 (reviewing the legislative history of the Act). Thus, the IACA undoubtedly survives rational basis review. See Mangalick, 633 F. Supp. 2d at 595 (upholding the IACA against an equal protection challenge). Specialties' equal protection challenge is meritless.[8]

---

[8] Specialties has advanced one potentially colorable equal protection argument – namely, that instead of providing for a private right of action for aggrieved Indians only (25 U.S.C. § 305e(d)(1)), the IACA should have extended a private right of action to all persons aggrieved by its violation. The Court need not address the merits of this challenge because, if successful, it would harm rather than help Specialties. Specialties is the alleged violator, and it is inconceivable how it is injured by the inability of aggrieved non-Indians to sue it under the IACA. This is someone else's claim, and Specialties has no standing to raise it. See Native Am. Arts, Inc. v. Duck House, Inc., No. 05-cv-2176, slip op. at 14-19 (N.D. Ill. Mar. 1, 2007) (confirming that "[w]hen a defendant raises an affirmative defense that is not encompassed in the plaintiff's case in chief, the defendant must satisfy the usual standing requirements in order to pursue the defense," and

17

F. Damages

Under the IACA, NAA may elect the greater of treble damages or "not less than $1,000 for each day on which the offer or display for sale or sale continues." 25 U.S.C. § 305e(b)(2)(B). Specialties argues that the quoted phrase permits a damages floor of $1,000 per day, regardless of the number of violative product types sold. NAA argues that the phrase authorizes damages of $1,000 per day per product type. Specialties also claims that, regardless of which interpretation prevails, the damages provision of the IACA violates due process.

Specialties' throwaway due process argument is not supported by the authorities it cites: Hale v. Morgan, 584 P.2d 512 (Cal. 1978), depends on features peculiar to the California state statute at issue in that case, and BMW of N. Am., Inc. v. Gore, 517 U.S. 559 (1996), and Exxon Shipping Co. v. Baker, 554 U.S. ___, 128 S. Ct. 2605 (2008), are inapposite because they concern jury awards of punitive damages.

As to the parties' dispute over the proper interpretation of the damages provision of 25 U.S.C. § 305e(b)(2)(B), it would be premature to resolve it on motion to dismiss. Even assuming that NAA will elect the measure of damages specified in subsection (B) rather than the treble damages alternative of

---

dismissing the same equal protection challenge for lack of standing).

subsection (A) (a safe assumption under the circumstances), the parties still have a long way to go before damages become an issue: NAA must first survive a motion for summary judgment and then prevail at trial. Therefore, the Court does not find it appropriate at this juncture to rule on the appropriate measure of damages under § 305e(b)(2)(B).

III. CONCLUSION

For the foregoing reasons, Specialties' motion to dismiss is DENIED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: November 29, 2010